United States v. Diaz You may proceed, Mr. Scott. Thank you, Your Honors. May it please the Court, Tim Scott for the appellant, Julio Diaz. The issue I'd like to discuss today is our assignment of Kimbrough error, and more specifically, whether the record reflects that the district court both appreciated and exercised its discretion whether or not to depart from the guidelines given the conversion rate from oxycodone to marijuana, and the fact, which I believe is undisputed, that that conversion rate does not appear to be based on any scientific or empirical evidence, at least as of the 2003 amendments to those guidelines. I think that it's further beyond any dispute between the parties that the record is silent as to whether or not the district court considered that Kimbrough discretion, wrestled with it in any meaningful way, and then disposed of it on the record. I think where the parties diverge is whether that inures to the benefit or to the detriment of the appellant in this case. The answer to that question comes from this Court's decision in Henderson. In Henderson, this Court wrote, because it is unclear whether the district court recognized and exercised its Kimbrough discretion, we reverse and remand for sentencing. I emphasize that because Henderson says on its face that when one is unable to tell, then that is a situation that is appropriate for remand. Citing cases in a more generalized guidelines context or for 3553 arguments or Kimbrough arguments that aren't addressed to this lack of scientific or empirical data, the government suggests that if the record is silent, that somehow the defendant or the appellant fall short. And that's simply not what the law says. I would again cite it, page 964 of Henderson, where it says his, meaning the district court, his ruling on this issue is unclear. It states we are unable to ascertain whether the district court committed procedural error by failing to appreciate its Kimbrough discretion or whether it recognized but declined to exercise that discretion. And that is precisely the situation here. But in Henderson, didn't the district court basically acknowledge, I'm not sure if I have the discretion and I'm going to kick it up to the Ninth Circuit to see? So there, it seems like the judge really didn't understand or wasn't sure if he had the discretion. Here, we don't really have that. If anything, I think from the context, suggests the judge probably understood it. And the objection here was really based on a policy disagreement with the sentencing commission. So isn't there enough here for us to infer that the judge understood that he had the discretion but decided not to exercise it? Well, the Henderson decision does include language where it says you should raise that to the Ninth Circuit or I'll need to hear from the Ninth Circuit. But the passage that I just quoted I think demonstrates that as far as this court was concerned, the record was ambiguous. And again, I would say the court wrote that we are unable to tell whether he appreciated his Kimbrough decision or whether he recognized it but declined to exercise it. So I agree, there is language in there suggesting that he didn't believe or that he wasn't sure if he had Kimbrough discretion. But then the court also points to other evidence in Henderson to suggest perhaps he did and just decided not to use it. And so I think where we end up at is where we are here, which is there's no way to tell one way or the other. Now, so this is a case that's in between a situation where the court says, I recognize my Kimbrough discretion. I recognize that this isn't based on empirical evidence. However, I choose to follow the guidelines here. And it's also not a case where the court says, I don't think I could do that even if I wanted to. So we're in what I would argue is sort of a Henderson middle zone of having to then remand under the circumstances. This remand that we're suggesting isn't suggesting, and we're not arguing that if this was a more traditional guidelines case, that a court would have to automatically and by rote state that I am choosing not to exercise my Kimbrough discretion. In a case where the guidelines are based on science and on empirical evidence. So it's our argument that if this was one of the almost all other guidelines, provisions and situations where, in fact, the Sentencing Commission has used national data and empirical evidence and sought input from the relative or the relevant scientific communities, that would be a different matter entirely. So this is a more narrow type of Kimbrough discretion in our view. What we're arguing is that when it is undisputed, and I believe it is undisputed here, that the guidelines have departed from that traditional Sentencing Commission role as they did in Kimbrough itself with the crack cocaine to cocaine equivalency or as they did in a child pornography guidelines case. This is similar to those two cases. It's the same where this is driven more by congressional mandate or by some other decision that is outside the realm of science and empiricism. Well, it's really, I think it's very clear that Judge Carney understood the policy argument you were making. And then it's clear he just didn't roll along the lines of the policy argument. What was he supposed to say? I mean, I have a sense that he rejected your policy argument. Well, it's clear that he received the argument, that he understood the argument. What isn't clear is what, if anything, he chose to do about it. Isn't it clear by his actions that he just chose to reject it because he went ahead and sentenced based on those guidelines? Well, it's certainly clear that he didn't accept it. I mean, that's clear. What isn't clear is whether he made a deliberative or a reasoned decision independent from Mr. Diaz as to whether these guidelines ought to be the starting place. And I guess what I mean by that is— So what you're saying, you're conceding that the judge understood that he had discretion to not follow the particular ratio. No, Your Honor. No, I'm not conceding. That's what you just said. No, and if I did, I absolutely misspoke. I want to be very clear that I am conceding, or the record reflects, that he acknowledged— Acknowledged the argument. He acknowledged the argument. He didn't say, I recognize that I have Kimbrough discretion, and here are the reasons why I think the guidelines ought to be applied as they exist. So basically your argument is when the record is silent on whether the judge understood it or not, then the silence should run in favor of the defendant, and he needs to be remanded so the judge can explain it better. That's exactly right, and I think that's exactly what Henderson says. The reason that I think that's important in a case like this, where the guidelines I think are concededly and admittedly not the result of the empiricism and the science that I've been describing, is that all of those factors are completely independent of Dr. Diaz in this case, or of the defendant. So while in some cases it would be the question of whether the guidelines are appropriate as applied to that defendant, and then we can infer the decision that the court made based on all of the other facts that were before it about the defendant, here the argument is, setting aside Dr. Diaz entirely for the moment, do these guidelines that evince a 6,500 to 1 ratio of oxycodone to marijuana, that represent a 1,500 percent increase in the amendments as of 2003, do those facts, independent of the defendant, suggest that we should take a closer look? Judge Carney could have and should have made a decision and made it on the record as to whether those guidelines are appropriate, not for Dr. Diaz, but for everybody. For any defendant, no matter what their situation and what their specific case is, in a situation like this, the court ought to have decided whether in all cases those guidelines were appropriate, and then whether that represented the appropriate starting point for Dr. Diaz. Now is this, do we subject this to a harmless error analysis, or a plain error analysis? Certainly not plain. There wasn't an objection, was there? There was an objection. It shouldn't be. A precise objection to not exercising the Kimbrough decision making? Well, at ER 64, the defendant made the point that the guidelines should be viewed with caution, because they were not based on science and were not based on empirical evidence. Now, I would concede that at the outset, that isn't the most strident objection that a person could put on paper. I'm not sure that Judge Carney, it was brought to his attention that you wanted a precise ruling on the policy issues as it applied to everybody, not just Mr. Diaz. Right. So I've got about 30 seconds left. May I respond to that? Yes, of course. So it wasn't the most strident objection to begin with. I would agree with that. But I think the way that it was interpreted by both probation and by the court is more than sufficient to get over the hurdle of plain error. And what I mean by that is in the third addendum to the pre-sentence report at page 2, the probation office says the defendant objects on the basis of what is essentially a legal policy disagreement with the guidelines. And then it says we defer to the court for resolution of that. I think the question is, is that since what you're raising here is a procedural error, the procedural error being the judge didn't say something that suggested he appreciated his discretion, shouldn't that argument have been made after the judge didn't do what he wasn't supposed to do? In other words, when you're objecting to the pre-sentence report, you don't know whether the judge is going to explain what he's doing or not. It only happens at the sentencing hearing. And I know you made this argument about you don't have to take an exception, but I really question whether that's what this is. The procedural error, doesn't the defense have to say something about it right then? Well, I guess our argument in response is that first, as we said in our papers, you do not have to take an exception. I don't think that's what this is. That's the problem, I think. I'm sorry? I'm not sure that's what this is. So if the court then rejects that, that this isn't an exception situation, that they should have entered a specific objection at the end of the sentencing, then I would agree that that was not specifically made. I would argue it shouldn't have to have been because of the exception rule. But if the court disagrees. You're arguing if it's plain error as a standard, you still have it as a standard. Yeah, but if it's plain error, Henderson has been on the books since 2008, I believe it is. The error was plain, affected substantial rights, and we comfortably beat the rest of those four prongs. All right. Thank you very much. Thank you very much, counsel. Good morning. May it please the Court. Anne Luwato-Wolf on behalf of the United States. The government does not agree that it is beyond dispute that the district court was silent in the face of the objection, nor does the government concede that there is no empirical data or national experience behind the oxycodone conversion to its marijuana equivalent. But first I'd like to just start with the issue of plain error. In Ayala-Nicanor, this court made clear that where, as here, a defendant fails to object to the sufficiency of the district court's explanation or discussion of the Kimbrough claim, that this court then reviews for plain error. Here in the defendant's excerpts of record, pages four and five, Judge Carney acknowledged his objection to using the marijuana equivalent for oxycodone to establish drug quantity, and immediately thereafter, he rejected it by adopting and incorporating the marijuana equivalent analysis in the pre-sentence investigation report and in the declarations of diversion investigator Kolb. I mean, you agree he didn't expressly say, I'm rejecting your argument. You're saying it's implicit from what he did. Correct. Correct, Your Honor. In other words, he acknowledges the objection, and immediately thereafter, he says, again, he doesn't say, I reject it, but he says, I do adopt the analysis as it is set forth in the PSR and in the Kolb declarations, which, of course, is the analysis as required by the sentencing guidelines. How do we know from that that he understood that he had the ability to reject the conversion ratio? Well, as this court's decisions have made clear, we do not assume that a district judge who has been sitting on the bench for almost 20 years, since 2003, since before the Kimbrough decision came down, does not know what the law is. Further, during the course of his analysis, in particular, of the 3553A factors, the judge noted numerous times that he does have the discretion. He acknowledged his discretion to vary above the guidelines or below the guidelines, and he said simply that the facts and circumstances of this case, he could not. In fact, he suggested that were it not for the mitigating arguments that Dr. Diaz made, and just as a side note, I note for the court that the focus of Dr. Diaz's arguments on resentencing was on his post-conviction rehabilitation. The argument that is now being raised before this court was little more than an afterthought. Dr. Diaz never actually even mentioned Kimbrough, but in any event. He mentioned it prior to the sentencing in the written materials, right? No, I don't believe so, Your Honor. I actually believe that. He didn't mention Kimbrough, but mentioned the issue about the conversion ratio. Yes, yes, yes. In other words, what I'm saying is that the Kimbrough decision itself was never actually even mentioned before the district court. So this thing about judges being deemed to know the law once they've been on 20 years, actually I would like to get the benefit of that myself. But, I mean, I really just kind of am wondering about that. So what's the cutoff? Five years? Is it seven years? Is it ten years? I would say that, again, when we have a district judge who has been on the bench for almost 20 years since before the Kimbrough decision came down. You know, I really can't buy that argument at all. Because sometimes judges peak and then they diminish. And it's just human nature. Do you have a case for that? Well, I certainly have plenty of cases where this court, including Henderson, where this court has stated that we don't. And, by the way, I'm not suggesting anything about Judge Carney because I also hold him in very high esteem. We certainly have cases such as LATAM, 141, Fed 3rd, 1328, where this court has stated that a lack of discussion of the law does not equate to a lack of understanding and that this court does not equate a district court's silence regarding its authority to depart with a misunderstanding of that authority. So the fact, again, that he acknowledged the argument and then immediately said, I am going to adopt the PSR and the declarations of the diversion investigator is sufficient because this court does not then assume that he did not understand that he had the authority to depart. So the difference with Henderson is the one Judge Lee pointed out, which is that in Henderson the judge expressly stated some confusion. Exactly, Your Honor. In Henderson, the court clearly articulated that he was confused whether he had the authority. Judge Carney did no such thing here. And again, he went on during his analysis to say, if it weren't for the mitigating arguments, I would impose above-guideline sentence. I simply cannot impose a lower sentence given these particular facts of this case, which, among others, 20 overdose deaths associated with this doctor's prescribing, over 400 visits to the emergency room. We have other doctors coming to the defendant and pleading with him to stop. We have family members begging him to stop giving their addicted loved ones prescriptions. And he continued for years. In one year, he was the highest prescriber of narcotics in Santa Barbara County. He prescribed, during the course of the investigation, over 5 million opiate pills. And people were dropping dead, sometimes after visiting him once, and they were dead the next day. And he knew it, and nothing stopped him until he was arrested in this case. And those are the facts that Judge Carney looked at when he imposed this sentence. And just briefly, in terms of the sentencing commission, the amendment that the defendant objects to mostly is when the commission took what had previously been a conversion of the entire weight of the drug. So every tablet of oxycodone, whether it was a 5-milligram tablet, a 10-milligram tablet, or an 80-milligram tablet, converted to the same marijuana equivalency. In 2003, recognizing that we're dealing with prescription medications, and therefore they have very specific amounts of the controlled substance in them, it said, in order to be more equitable, we will now make the conversion of solely the actual drug. It's one of the few drugs in the sentencing guidelines where the commission has done that. The other would be when you have actual methamphetamine purity analysis. So here, the conversion only accounts for the actual amount of oxycodone. And that is different than almost every other drug, which is by the gross weight. For example, fentanyl, which is one of the drugs that the defendant brought up in his papers, that, if it is laced, if there is a substance, whether it be heroin that's laced with fentanyl, or sugar that's laced with fentanyl, or acetaminophen that's laced with fentanyl, the entire amount is converted by the fentanyl conversion rate, which, by the way, as of a year ago is not even called a marijuana equivalent. It's now called a converted drug weight. In any event, that is what makes the oxycodone, perhaps at first blush, appear to be significantly higher, because you are only counting the amount of the drug. You are not counting the gross weight of the pill. You are not counting the gross weight of whatever controlled substance it might be laced with, which is what happens when converting, say, fentanyl or a fentanyl analog. That would be, if you even have trace amounts of the controlled substance, you convert the entire amount. And unless the court has questions, the government submits. All right. Thank you, counsel. Thank you. Thank you very much. U.S. v. Diaz will be submitted.
judges: Wardlaw, Kennelly, Lee